UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF NEW YORK
--------------------------------------------------------
IN RE:

    BRUCE R. BURLINGAME          CASE NO. 04-68617

                     Debtor          Chapter 7
--------------------------------------------------------
APPEARANCES:

KRISTEN SUNSER-KING, ESQ.
Attorney for Debtor
239 East Water Street
Syracuse, New York  13202

PETER C.L. ROTH, ESQ.
Senior Assistant Attorney General
33 Capitol Street
Concord, New Hampshire  03301-6397

ERIN HOLLY BURLINGAME
Pro Se
P.O. Box 7734
Nashua, NH  03061-7734

Hon. Stephen D. Gerling, Chief U.S. Bankruptcy Judge

**MEMORANDUM-DECISION, FINDINGS OF FACT,
CONCLUSIONS OF LAW AND ORDER**

Presently before the Court is a motion filed on February 18, 2005, by way of an Order to Show Cause, by Bruce R. Burlingame (the "Debtor").  The Debtor seeks a determination by this Court that Erin Holly Burlingame ("EHB"), as well as the Honorable Gary Hicks ("Judge Hicks"), Presiding Judge for the Hillsborough County Superior Court, South ("New Hampshire Court") and the New Hampshire Court (hereinafter the latter two jointly referred to as "Respondents") violated the automatic stay provided for in § 362(a) of the U.S. Bankruptcy

Code, 11 U.S.C. §§ 101-1330 ("Code"). Debtor alleges that EHB and the Respondents violated the automatic stay by having him incarcerated on February 8, 2005, pursuant to an arrest warrant issued on November 5, 2004, and by continuing an action against him "for the sole and express purpose of collecting a debt listed in the bankruptcy petition." *See* Debtor's Motion at ¶ 34. Debtor requests damages in the amount of $10,000 per day of incarceration, "plus any other damages related to the continued collection efforts," including attorney's fees. *Id.* at ¶¶ 39-40. In addition, the Debtor requests his immediate release from incarceration and an order restraining the Respondents from proceeding in any "enforcement type action against the Debtor while the automatic stay is pending" and an order restraining EHB from any further collection efforts while the automatic stay is in place. *See id.* at 11.

The motion was heard at the Court's regular motion term in Binghamton, New York on February 24, 2005. The Court allowed the appearance of Peter C.L. Roth, Esq. ("Roth"), Sr. Assistant Attorney General for the State of New Hampshire, on behalf of the Respondents, as well as that of EHB via telephone on February 24, 2005. The Court adjourned the motion to March 31, 2005, in order to afford the parties an opportunity to submit memoranda of law in support of their respective positions. Roth filed opposition to the Debtor's motion on March 25, 2004 on behalf of the Respondents, and the Debtor filed a memorandum of law on March 28, 2005. The motion was submitted for decision following the oral argument on March 31, 2005.

**JURISDICTIONAL STATEMENT**

The Court has core jurisdiction over the parties and subject matter of this contested matter pursuant to 28 U.S.C. §§ 1334, 157(a), (b)(1) and (b)(2)(O).

### **FACTS**

The Debtor filed a voluntary petition pursuant to chapter 7 of the Code on December 9, 2004. In Schedule E, attached to his petition, he lists EHB as holding a priority claim for medical coverage pursuant to Code § 507(a)(7).[1] He also lists the New Hampshire Court as "Assignee or other notification" for EHB. He lists no expense for alimony, maintenance and support. *See* Schedule J, attached to his petition. However, he lists a payroll deduction for "alimony" in the amount of $496.56 per month. *See* Schedule I, attached to his petition. According to his schedules, his total monthly net income is $1,805.80 and his total monthly expenses are $1,917.66. *See* Schedules I and J, respectively.

According to the Certificate of Service, filed on December 11, 2004, both EHB and the New Hampshire Court received notice of the filing of the voluntary petition and the Code § 341 meeting of creditors scheduled for January 14, 2005. At the hearing on February 24, 2005, it was represented to the Court by Debtor's counsel that EHB appeared at the § 341 meeting on January 14, 2005, as well as the adjourned meeting of creditors held on January 28, 2005. EHB, who

---

[1] Seventh priority is given to "allowed claims for debts to a spouse, former spouse, or child of the debtor, for alimony to, maintenance for, or support of such spouse or child, in connection with a separation agreement, divorce decree or other order of a court of record . . . ." 11 U.S.C. § 507(a)(7).

4

appeared telephonically at the February 24th hearing, did not deny her attendance at the meetings and did not make any representation to the Court that she did not know of the Debtor's bankruptcy case.

The Debtor and EHB were divorced on August 23, 2002. The couple has no children. According to the terms of the Decree of Divorce, it appears that EHB was to receive $500 per month in alimony for a period of three years. In addition, the Debtor allegedly was to provide EHB with medical and dental insurance for a limited period.

Sometime in 2003 EHB allegedly petitioned the New Hampshire Court, requesting relief based on the Debtor's failure to reimburse her for medical bills/counseling fees, as well as his failure to reimburse her for medical insurance coverage. The Debtor did not appear before Judge Hicks to oppose the request, and EHB's petition was granted on May 20, 2003. *See* Exhibit A of Debtor's Memorandum of Law. The May 20, 2003 Order states that

> [t]he respondent is found in contempt as a result of his failure to maintain medical insurance for the benefit of the petitioner, as required by paragraph 10 of the Court's Decree of Divorce, dated October [sic] 23, 2002 and his failure to appear in court for the hearing on the Motion for Contempt scheduled on May 20, 2003. The respondent is ordered to reimburse the petitioner $994.48 for medical bills/counseling fees that were incurred by her forthwith. The respondent shall forthwith reimburse the petitioner for $375 per month that she pays for her medical insurance and will continue to do so on a monthly basis through November 2003.

*Id.*

In July 2003 EHB allegedly petitioned Judge Hicks to make a finding of contempt against the Debtor and to issue a warrant ("capias") for his arrest for his failure to comply with the May 20, 2003 order. On August 5, 2003, the New Hampshire Court found the Debtor in contempt and issued a warrant for his arrest. *See* Exhibits B and C of Debtor's Memorandum of Law. It is

5

alleged that at some point the New Hampshire Court vacated the arrest warrant and on December 31, 2003, EHB sought reconsideration, requesting that the warrant be reinstated. *See* Exhibit D of Debtor's Memorandum of Law. On or about September 13, 2004, EHB petitioned the New Hampshire Court for modification of support, requesting that it be increased by at least $500 per month and that it be extended another ten years ("Modification Petition"). *See* Exhibit D of Debtor's Motion. She also requested that Debtor be required to pay for college classes for her. *Id.* In addition, EHB requested that in the event that the Debtor fails to meet his legal obligations once again, the New Hampshire Court issue a criminal warrant for his arrest "so that he may be brought back across state lines." *Id.*

At the hearing before this Court on February 24, 2005, EHB represented to the Court that her Modification Petition was originally scheduled to be heard on November 4, 2004. However, counsel appeared on behalf of the Debtor to request an adjournment because he allegedly was recuperating from head injuries sustained in an accident.[2] EHB argued that it was merely a delay tactic to allow the Debtor an opportunity to file his bankruptcy petition, which he did on December 9, 2004. According to a document provided to this Court by EHB, the New Hampshire Court's Deputy Clerk signed an Order for Arrest of the Debtor on November 5, 2004. The Clerk of the New Hampshire Court provided Notice of Hearing on February 8, 2005, to the Debtor on or about January 12, 2005. *See* Exhibit E of Debtor's Motion. According to the Debtor, the Order for Arrest, dated November 5, 2004, was effected by the sheriff on February 8, 2005, apparently at a hearing before Judge Hicks.

---

[2] EHB has provided a copy of a Motion to Continue, signed by Jannette L. Mooney on behalf of the Debtor and dated November 4, 2004.

According to the Notice of Hearing, dated January 12, 2005, the hearing was to address EHB's Modification Petition. The Notice of Hearing also indicated that "[a]ll issues raised by the pleadings will be disposed of immediately without your participation." *Id.* By order of Judge Hicks, dated February 8, 2005 ("February 8th Order"), EHB's request for modification of support was denied; however, the Debtor was found to be in contempt and incarcerated . *See* Exhibit E of Debtor's Memorandum of Law. Bail was originally set at $1,000 cash. According to the February 8th Order, if the $1,000 bail was paid by the Debtor, it was to be turned over to EHB and that Debtor would receive a credit against his obligations to EHB. "This will bring his alimony essentially current.$^3$ There remains the issue of legal fees and medical bills." The New Hampshire Court denied EHB's request for further health insurance coverage and also denied her request for further support, stating that the Debtor "simply does not have the ability to pay any <u>additional</u> alimony or the ability to pay for <u>further</u> health insurance coverage" (emphasis supplied).

On February 23, 2005, one day prior to the original hearing on the Debtor's motion in this Court, Judge Hicks signed a revised order ("Revised Order"). *See* Exhibit attached to Respondents' Objection to Debtor's Motion, filed March 25, 2005. In that order, it is represented that it was the Debtor's failure "to comply with court orders including his responsibility for an alimony arrearage in the amount of $1,100" which warranted the finding of contempt. *Id.* at 1. The Revised Order also states that if paid, the monies were to be paid towards the alimony obligation. *Id.* It further states that at a hearing on February 17, 2005, the New Hampshire Court determined that the Debtor had failed to purge himself of his contempt. *Id.* According to the

---

$^3$ According to the February 8th Order, the Debtor owed $1,100 in alimony arrears.

7

Revised Order, at the February 17th hearing, Judge Hicks determined that "the [Debtor] had an ability to pay and contemptuously declined to do so." *Id.* at 1. However, because partial payment had been received by means of a wage assignment, bail was reduced to $500. *Id.* at 2. Judge Hicks goes on to indicate that the February 8th Order was issued "out of a concern that the [Debtor's] actions threatened the integrity of proper orders of this State Court." *Id.*

Judge Hicks stated in the Revised Order that "it appears that part of this Court's order of February 8, 2005 may be in error." *Id.* at 3. He acknowledged that the legal fees and medical expenses may be other than support and, therefore, dischargeable and subject to the automatic stay. However, he found the alimony obligation is not dischargeable and the automatic stay does not apply to efforts "to collect it from a recalcitrant, contumacious party." Judge Hicks noted that the Bankruptcy Code should not deprive the New Hampshire Court "of its ability to protect the integrity of its orders, which are entitled to full faith and credit."

In addition, Judge Hicks states in the Revised Order that the $450 received from the Debtor's employer should not have been applied to the "arguably dischargeable" $427.09 bill. It should have been applied to the alimony arrearage. In the Revised Order, Judge Hicks indicated that "[s]ignificantly, the petitioner [EHB] has asked, by recent pleading, that this Court refrain from any further action on her petition for alimony modification until the respondent's bankruptcy case is closed." Judge Hicks concluded that "even though it is excepted from the automatic stay pursuant to 11 U.S.C. § 362(b)(2)(A)," any further action will be stayed pending the bankruptcy. Judge Hicks also ordered that the Debtor be released from custody that day. On March 21, 2005, the Debtor was granted a discharge in his bankruptcy case.

## DISCUSSION

8

As an initial matter, the Court notes that by virtue of the Revised Order, the Debtor is no longer incarcerated and that no further action is to be taken by the New Hampshire Court "pending the resolution of the [Debtor's] bankruptcy" in this Court. *See* Revised Order at 4. Accordingly, there is no need for this Court to address the Debtor's request for his immediate release and his request that the Respondents be restrained from proceeding against him.

Respondents suggest that this Court should abstain from hearing the Debtor's motion under the *Younger* abstention doctrine[4] given that the "contempt process is an important state interest and the Debtor could have brought the automatic stay issue as part of the contempt proceeding against him." *See* Respondents' Opposition at ¶ 8. In opposing the Debtor's motion, the Respondents also assert the defenses of judicial and sovereign immunity. Additionally, the Respondents argue that the *Rooker Feldman* doctrine prevents this Court from reviewing the Debtor's incarceration, as ordered by Judge Hicks, citing *In re Ivani*, 308 B.R. 132, 135-36 (Bankr. E.D.N.Y. 2004) and *In re Siskin*, 258 B.R. 554, 560-63 (Bankr. E.D.N.Y. 2001).

Abstention

The Court notes that in *Carver v. Carver*, 954 F.2d 1573 (11th Cir. 1992), the Court of Appeals for the Eleventh Circuit held that the bankruptcy court should have abstained from considering a claim for damages for a violation of the automatic stay in connection with the enforcement of certain terms of a decree of divorce. *Id.* at 1580. In that case, the state court found the debtor in contempt for having failed to comply with its prior order in connection with the parties' divorce. The state court ordered that the debtor be incarcerated for a period of six

---

[4] *See Younger v. Harris*, 401 U.S. 37 (1971).

months, which sentence would be suspended if he paid certain mortgage arrears, as well as the attorney's fees of his former spouse. *Id.* at 1575. The debtor was released after seven and a half days when his current wife borrowed monies to pay his bail. *Id.*

The debtor commenced an adversary proceeding in the bankruptcy court, asserting a willful violation of the automatic stay. *Id.* at 1575-76. The bankruptcy court, as affirmed by the district court, found that the former spouse and her attorney had violated the automatic stay by commencing the action for contempt and awarded the debtor $18,295.78 in damages. *Id.* at 1576. The Court of Appeals found that "bankruptcy and district courts should tread very carefully when asked to impose sanctions for violation of the automatic stay where the actions underlying the violation involve alimony, maintenance, or support." The court concluded that the bankruptcy court should have abstained from considering the debtor's motion. *Id.* at 1579.

In 1992 the Supreme Court in its decision in *Ankenbrandt v. Richards*, 504 U.S. 689 (1992) found that "'[a]bstention from the exercise of federal jurisdiction is the exception, not the rule.'" *Id.* at 705, quoting *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 813 (1976). It went on to limit the "domestic relations exception" to the *issuance* of divorce, alimony or child custody decrees. *Id.* at 704. At least one bankruptcy court has concluded that the *Ankenbrandt* decision has "limited, if not overruled" the conclusion in *Carver* that a bankruptcy court should abstain from hearing any domestic relations matters. *See In re Fullwood*, 171 B.R. 424, 427 (Bankr. S.D. Ga. 1994); *see also In re Rogers,* 164 B.R. 382, 389 (Bankr. N.D. Ga. 1994) (distinguishing *Ankenbrandt* on the basis that it did not involve a bankruptcy case and noting that Congress has implicitly mandated "that bankruptcy courts proceed with caution in these motions" involving domestic relations issues). In this case, the

Court concludes that abstention is not appropriate, and that it has jurisdiction to address the issues presented as they do not concern the issuance of divorce, alimony or child custody decrees.

The argument made by the Respondents that this Court should abstain based on the *Younger* doctrine also finds no basis. A review of the Supreme Court's decision in *Younger* reveals that the court was addressing "the fundamental policy against federal interference with state criminal prosecutions . . . ." *Younger*, 401 U.S. at 46. The Supreme Court held that absent unusual circumstances, a federal court could not interfere with a pending state criminal prosecution. *Id.* at 54. However, the matter *sub judice* does not involve a pending criminal matter, irrespective of Respondents' argument that the decision to have the Debtor incarcerated involved "Respondents' interest in the administration of justice." *See* Respondents' Objection at ¶ 8.

> Courts determine whether a contempt order is civil or criminal not by how the order is denominated (if, indeed the issuing court even labels the order as civil or criminal), but, rather, by examining the provisions of the order itself and its surrounding circumstances. A contempt order that permits the contemnor to mitigate or avoid punishment by taking action consistent with the vindication of the rights of another party to the litigation is considered a civil contempt order. A contempt order that, on the other hand, incarcerates a party for a definite period of time or imposes another penalty, without any provision for purge of the contempt, does not serve to redress a private right and is considered a criminal contempt order.

*In re Maloney*, 204 B.R. 671, 674 (Bankr. E.D.N.Y. 1996) (citations omitted).

If the February 8th Order involved criminal contempt, then the New Hampshire State Court's assertion of the *Younger* doctrine might have merit. However, under the terms of the February 8th Order, the Debtor was incarcerated and bail was set at $1,000 cash. There was no time set for his release. The February 8th Order provided that in the event that the Debtor made payment, it was to be paid to EHB, bringing "his alimony essentially current." Because it is

11

apparent that Judge Hicks' February 8th Order permitted the Debtor to avoid punishment by making the payments found to be due for support. The Court concludes that it was civil not criminal contempt and the *Younger* doctrine is inapplicable.

Judicial Immunity

With respect to the Respondents' assertion of judicial immunity, it is a long established principle of law that a judge is shielded from not only liability for damages but also from suit as well, in connection with any actions taken in his/her judicial capacity. *Mireles v. Waco*, 502 U.S. 9, 11-12 (1991); *Stump v. Sparkman*, 435 U.S. 349, 356-57 (1978); *Heghmann v. Town of Rye,* Case No. 04-100-SM, 2004 WL 2526417 at *4 (D.N.H. Nov. 8, 2004); *Kearns v. Orr (In re Kearns)*, 161 B.R. 701, 704 (D. Kan. 1993), *modified on reconsideration,* 168 B.R. 423 (D. Kan. 1994). This is true even if the action was in error, provided that it was not done "maliciously or was in excess of his authority." *Sparkman*, 435 U.S. at 356. There has been no suggestion that Judge Hicks issued the orders out of malice or without authority. Therefore, the Court must deny the Debtor's motion to the extent that it seeks damages against Judge Hicks as he is judicially immune.

The Debtor does not specify how the actions of Judge Hicks are to be distinguished from any action taken by the New Hampshire Court. According to a document provided to this Court by EHB, the New Hampshire Court's Deputy Clerk signed an Order for Arrest on November 5, 2004, based on an order of the New Hampshire Court. The Clerk of the New Hampshire Court also provided Notice of Hearing on February 8, 2005, to the Debtor on or about January 12, 2005. The courts have held that judicial immunity should be extended to individuals performing tasks

"so integral or intertwined with the judicial process that these persons are considered an arm of the judicial officer who is immune." *See Bush v. Rauch*, 38 F.3d 842, 847 (6th Cir. 1994); *see also In re Castillo*, 297 F.3d 940, 952 (9th Cir. 2002); *Boyer v. County of Washington*, 971 F.2d 100, 102 (8th Cir. 1992); *Olivia v. Heller*, 839 F.2d 37, 39-40 (2d Cir. 1988) (citing cases where immunity extended to clerks who issued warrants and clerks who fixed bail in misdemeanor cases). Accordingly, the Court concludes that the New Hampshire Court, which includes its Court Clerk and Deputy Clerk, as well as Judge Hicks, are immune from suit and from liability under the circumstances of this case given that their actions in having the Debtor arrested and subsequently incarcerated were integral to the judicial process.

Because the Respondents are immune from liability, the Court is left with the question of what relief it may afford the Debtor if it were to determine that Judge Hicks/New Hampshire Court violated the automatic stay. Normally, an action taken in violation of the automatic stay is void. *See Rexnord Holdings, Inc. v. Bidermann*, 21 F.3d 522, 527 (2d Cir. 1994), citing *In re 48th Street Steakhouse, Inc.*, 835 F.2d 427, 431 (2d Cir. 1987). However, in this case, to hold that the action of having the Debtor incarcerated was void is of no substance given that the Debtor was released from jail before the matter was heard by this Court.

Violation of the Automatic Stay by EHB

The only question remaining is whether EHB willfully violated the automatic stay and is liable for damages pursuant to Code § 362(h). In this regard, it is the Debtor that has the burden of establishing the following by a preponderance of the evidence:

> 1) a bankruptcy petition was filed; 2) the debtor is an "individual" under the automatic stay provision; 3) the creditor had notice of the petition; 4) the

creditor's actions were willful violations of the stay; and 5) the debtor suffered damages.

*In re Harris*, 310 B.R. 395, 399 (Bankr. E.D. Wis. 2004).

There is no dispute that the Debtor is an individual and filed a petition pursuant to chapter 7 of the Code on December 9, 2004. EHB is listed in the Debtor's schedules as a creditor. *See* Schedule E, attached to Debtor's petition. EHB does not dispute that she received notice of the Debtor's case. Nor does she dispute that she attended two meetings of creditors held on January 14, 2005 and January 28, 2005. The question is whether the Debtor demonstrated that EHB willfully violated the automatic stay.

At the hearing before this Court on February 24, 2005, EHB acknowledged that pre-petition she had requested that a capias be reissued by the New Hampshire Court so that when the Debtor arrived for the original November 4, 2004 hearing on her Modification Petition, Judge Hicks could also handle "it."[5] Of note is the fact that EHB's action to seek modification of the support provisions in the judgment of divorce was commenced pre-petition and, arguably, would have been determined pre-petition but for the Debtor's having sought an adjournment of the hearing originally scheduled for November 4, 2004. The Order for Arrest of the Debtor was issued by the New Hampshire Court's Deputy Clerk prepetition on November 5, 2004, after the appearance of Debtor's counsel on November 4, 2004, requesting the adjournment. The Order for Arrest stated that the sheriff was to arrest the Debtor no later than May 5, 2005, and bring him before the New Hampshire Court "when apprehended." According to the documents provided by EHB, the Debtor was taken into custody by the Deputy Sheriff on February 8, 2005.

---

[5] "It" apparently being the issue of his failure to comply with the New Hampshire Court's prior order of May 20, 2003.

14

As discussed previously, at the hearing on February 8, 2005, Judge Hicks elected not to charge the Debtor with criminal contempt and to have him incarcerated for some predetermined period of time. Instead, he afforded the Debtor the option of paying the arrears and purging himself of the contempt of the New Hampshire Court's orders. Judge Hicks made it clear in his Revised Order that the Debtor's actions over the past two and a half years in failing to comply with the terms of the August 2002 Decree of Divorce, as well as the order of contempt issued in May 2003, threatened the integrity of the court. In seeking to enforce his prior orders, Judge Hicks made a determination that it was necessary to have the Debtor, who resides out of state in New York, incarcerated until such time as he remedied his contempt. Judge Hicks made a specific finding that the Debtor was able to afford to pay the arrears. However, Judge Hicks also concluded that he did not believe that the Debtor would be able to afford an increase or extension of support payments beyond those provided for in the judgment of divorce.

The Court has reviewed a number of cases, including those cited by the parties, which involved state court contempt proceedings commenced against a debtor that ultimately resulted in an order for the debtor's arrest and incarceration. *See In re Moon*, 211 B.R. 483 (S.D.N.Y. 1997); *Ivani*, 308 B.R. 132 ; *In re Hass*,[6] Case No. 04-11534, 2004 WL 3132027 (Bankr. E.D. Va. Dec. 22, 2004); *In re Bezoza*, 271 B.R. 46 (Bankr. S.D.N.Y. 2002) ; *In re Lori*, 241 B.R. 353 (Bankr. M.D. Pa. 1999). While all of them have factors in common with the matter herein, for the most part they are easily distinguishable.

This Court believes that the case of *In re Johnston*, 321 B.R. 262 (D. Az. 2005), originally

---

[6] The case was originally captioned as *In re Haas.* The misspelling of the debtor's name was corrected in the body of the court's decision at the debtor's request.

15

cited by the Debtor, has some relevance. *Johnston* involved a motion filed by the former spouse of the chapter 11 debtor and her attorney in state court prepetition seeking to hold the debtor in contempt for nonpayment of spousal support and requesting that he be incarcerated until he had purged himself of the contempt. The state court, despite being made aware of the bankruptcy filing, issued an order finding that the debtor had the ability to comply with the court's prior order in connection with the divorce decree and that he was in contempt of that order. The court then ordered that he be incarcerated. Ultimately, the bankruptcy court concluded that there was no basis to hold the former spouse and her attorney in violation of the automatic stay. On appeal, the district court found that because the state court's order "was overly broad and did not consider whether Johnston could pay the judgment from non-estate property, it violated the stay." However, the district court, having found that the state court had violated the automatic stay, then considered whether the former spouse and her attorney also had violated the automatic stay. The district court found that there was "sufficient evidence to support the bankruptcy court's conclusion that the state court had acted on its own in issuing the [contempt] Order." *Id.* at 281. However, the district court also found that the bankruptcy court had erred in finding that there was not a continuing violation of the automatic stay based on what it deemed to be the affirmative duty of the former spouse and her attorney to take steps to stay or vacate the state court's order. *Id.* at 286. Failing to remedy the violation "exposes them to sanctions for a willful violation under § 362(h)." *Id.* The district court reversed the bankruptcy court's decision on that point and remanded it back to the bankruptcy court for further determination of whether sanctions were warranted under the circumstances. *Id.*

Also of relevance to this Court's decision is the case of *Rogers*, *supra*, 164 B.R. 382. In

16

*Rogers* the debtor's former spouse commenced an action in state court against the debtor approximately five months prepetition. The state court entered a judgment against the debtor for contempt approximately sixteen days prior to the commencement of the debtor's bankruptcy case. *Id.* at 384-85. The state court judge allowed the debtor a fifteen day grace period in which to purge himself of contempt. He failed to do so and a few hours after he filed his chapter 13 petition on February 4, 1983, he was incarcerated. *Id.* at 385. Ultimately, he was released from jail after fifteen days when his mother paid the amount necessary to cure the support arrears. *Id.*

The debtor alleged that his former wife, as well as her attorney, had violated the automatic stay by failing to take all reasonable actions to cause his release from jail. *Id.* The bankruptcy court made a finding that

> [t]he Defendants' involvement in the state court action was at end once Judge Whalen entered his order on January 19, 1993. The incarceration that occurred on the date the Debtor filed his petition was an act of the state court trying to enforce its judgment, and it was not an act of the Defendants. As such, the Defendants did not violate the stay when the Debtor was placed in jail.[7]

*Id.* at 391. The court concluded that the debtor had failed to establish any duty on the part of the defendants to prevent the state court from carrying out its order. *Id.* Furthermore, the bankruptcy court noted that because the state court had concurrent jurisdiction to determine the extent of the automatic stay, the debtor should have raised the issue in that forum. *Id.*

Unlike the situation in *Johnston*, the Debtor was not confronted for the first time with an assertion by his former spouse of contempt and a request that he be incarcerated. That had occurred in 2003 when the New Hampshire Court issued its Order of May 20, 2003 finding the

---

[7] The bankruptcy court declined to address the issue of whether the state court had violated the automatic stay by incarcerating the debtor. *Id.* at 392 n.14.

17

Debtor in contempt - long before the Debtor ever filed his chapter 7 petition.  Instead, the Court must agree with the conclusion in *Rogers* that the Debtor's arrest was the result of his flagrant disregard for those prior orders.  The actions taken by EHB in connection with Judge Hicks' ultimate incarceration of the Debtor were all initiated pre-petition.  The Debtor has failed to establish that there were any steps that EHB could have taken post-petition to prevent Judge Hicks from taking the actions he did.  Those actions were, as Judge Hicks indicated in his Revised Order, an effort to uphold the dignity of the New Hampshire Court.  Under those circumstances, the Court concludes that EHB had no duty to seek the Debtor's release once he was incarcerated by Judge Hicks, and that EHB's actions did not wilfully violate the automatic stay.

Based on the foregoing, it is hereby

ORDERED that the Debtor's motion seeking damages pursuant to Code § 362(h) for an alleged violation of the automatic stay by the Respondents and EHB is denied.

Dated at Utica, New York

this 16th day of May 2005

/s/
STEPHEN D. GERLING
Chief U.S. Bankruptcy Judge